GEORGE F. SWANN ET AL. *v.* THE SOUTHERN EXPRESS COMPANY.

EVIDENCE. *Express company. Receipt by route messenger for package. Explained by his own testimony.*

In a suit by an express company on the bond of one of its route messengers, to recover from him and his sureties the value of a package alleged to have been received by him as messenger, and embezzled or lost, where the company, for the purpose of establishing the reception of the package by the defendant, introduced in evidence his receipt therefor, executed to the connecting messenger in the usual mode on the regulation messenger-book carried by said connecting messenger, in the absence of an express stipulation in the contract between the company and the defendant messenger to the contrary, his testimony is competent in his own behalf to deny that he had, in point of fact, received the package, for which he admitted that he had executed the receipt.

ERROR to the Circuit Court of Hinds County.

Hon. GEORGE F. BROWN, Judge.

This was an action of covenant by the Southern Express Company against George F. Swann, and E. Virden and G. T. Swann, sureties on his bond, given to the express company as route messenger, conditioned that he would well and truly perform the duties required of him in said employment, and account for all money or property which might come into his control by reason of said employment, and indemnify the company against all loss or damage which might happen to such money or property while under his control, and against all liability on account of his fault or neglect.

The breaches assigned were, in substance, that in his capacity as messenger he had received a package containing $1,500, which was not accounted for by him, but had been embezzled or lost.   The defendants denied the breaches assigned, and gave notice that they would prove the package in question was never received by Swann, but was lost while in the control of one Beall, the connecting route messenger.

The question presented is whether Swann can contradict his receipt to Beall for the package.

The remaining facts, showing how the question arises, are stated in the opinion of the court.

*T. J. & F. A. R. Wharton,* for the plaintiffs in error, argued the case orally, and filed the following brief : —

The merits of the case can be reached and disposed of by resolving one question, and that is, the refusal of the court to permit the plaintiff in error, George F. Swann, to deny that he ever received the package of money alleged to have been lost, notwithstanding he had given his receipt for it ; or in not permitting him to explain how and under what circumstances he gave said receipt, and did not in point of fact receive the package specified in that receipt.   We maintain that the court should have permitted him to testify in regard to those matters.

In *Lampley* v. *Scott,* 24 Miss. 528, the court held that, as a general rule, a party was not permitted to testify in his own favor (this was before the provision of the Code of 1857, allowing parties to testify), and states the rule as at common law ; but it declares that all rules of evidence are adopted for practical purposes in the administration of justice, and must be applied so as to promote the ends for which they were designed. The instances in which such evidence has been received have been so frequent, that they may be said almost to constitute the rule rather than the exception to it.   Such evidence is receivable when no other evidence is reasonably to be expected, as there would be a failure of justice in many cases if such evidence was not admissible.   In the case cited, the plaintiff in error sued the defendant in error in assumpsit for $600. He proved that he delivered the defendant a bag of spice, at Gainesville, Ala., to be carried and delivered to D. P.

McAllen, at De Kalb, Kemper County, Miss., thirty miles distant, and that he had not so delivered it. The defendant offered proof that he was robbed. The plaintiff objected; but the objection was overruled, and he took exceptions. He then offered himself as a witness to prove the fact of the robbery, and the circumstances attending it. The plaintiff objected to his testifying, but the objection was overruled, and he filed exceptions. The court, in its opinion, review the authority found in 14 Serg. & R. 281; 9 Wheat. 332; 1 Greenl. Evid. 68, as to the origin and foundation of the rules of evidence, such as that they are designed " to promote and facilitate the ends of justice;" that " they are founded on general interest and convenience," and " must conform to the exigencies of society;" or, as stated by Greenleaf, *ubi supra*, " All rules of evidence are adopted for practical purposes in the administration of justice, and must be so applied as to promote the ends for which they were designed."

Many exceptions in practice to the general rule have been introduced, in order that it might not defeat the very ends to promote which it was originally adopted.

This case of *Lampley* v. *Scott* is a very interesting one, reviews a number of very important authorities bearing on the points discussed, and affirms the judgment of the court below permitting the defendant to testify (and this before the adoption of the statute making parties to the record witnesses) as to the fact that he was robbed of the money intrusted to him, and the circumstances under which the robbery was perpetrated.

In *Moye* v. *Herndon*, 30 Miss. 110, it is held that the rules of evidence ought to be liberally construed for the advancement of justice. In *Partee* v. *Silliman*, 44 Miss. 272, it is laid down that " the policy of modern legislation and judicial decision is rather to widen the door for the reception of testimony," and to give to the party proposing the testimony the benefit of all doubts as to its competency. " A receipt for money is peculiarly open to evidence. It is only *prima facie* evidence." 2 Parsons on Contracts, 222, and note 1, 555; see also *Gasquet* v. *Warren*, 2 S. & M 514; 1 Greenl. Evid. § 305, and notes; 5 I. R. 68. In *Fuller* v. *Crittenden*

9 Conn. 406, it is said, " The true view of the subject seems to be, that such circumstances as would lead a court of equity to set aside a contract, such as fraud, mistake or surprise, may be shown at law to destroy the effect of a receipt." On the general doctrine of the effect of receipts, and how far they are explainable, see 1 Brightley, Digest (N. Y.), p. 1562, § 546 *et seq.*

*W. P. Harris*, for the defendant in error, argued the case orally.

*Harris & George*, for the defendant in error, filed the following brief: —

1. Swann, the defendant, having admitted that the receipt described by Beall and shown in court was his (that receipt being the regulation receipt of the express company, in its messenger's book), could not be permitted to deny that he received the goods receipted for.

2. The receipt on the regulation messenger-book is not evidence only: it is an act of serious consequence to all concerned. It is not governed by the ordinary rules applicable to receipts given for a money payment, or the like.   It is a contract, and more than a written contract, to carry and deliver safely.   It is a discharge of one of the company's servants from a liability.

3. There is a class of receipts which cannot be explained by parol, because contracts. *Drury* v. *Fay*, 14 Pick. 326 ; *Stapleton* v. *King*, 33 Iowa, 28 ; *Lambertson* v. *Van Boskerck*, 4 Hun (N. Y.), 628.   And there is a class which, once given, cannot afterwards be disputed by the giver, by parol denial or otherwise.   Bigelow on Estoppel, 471.

4. The company's receipt-books serve as tracers and checks in case of lost packages, and fix the liability of the particular messenger ; in the case at bar the lost package is traced to Swann: his receipt releases all other messengers up to him.

5. The rule is universal, that where a statement is made in writing, on which others are expected to act, the party making it is held to warrant its truth.

6. Swann might deny that he gave the receipt, and this would involve proof that imposition was practised in obtaining

it; but admitting the receipt to have been given, his denial of its truth ought not to be permitted.    41 Miss. 65.

7. The defendant's (Swann) receipt, if false, has induced the plaintiff to bring its action.    See *Cocke* v. *Kuykendall*, 41 Miss. 65.    There is a count for negligent conduct in giving the receipt.

*W. L. Nugent* argued the case orally, and filed the following brief in reply, for the plaintiffs in error: —

It is admitted by the attorneys for the defendant in error that a receipt in writing may be explained, and that the thing receipted for may be shown never to have been received in point of fact.    Indeed, the well-recognized rule is, that in all cases where a court of equity, on the ground of fraud, accident or mistake, would vacate or reform the writing, the same defences may be availed of at law.    The effort here is to vary the rule, on the supposition that the receipt in this case was a contract in writing, which cannot be modified by parol testimony.    The idea is not founded in any reason, and if examined will rest wholly in the principles regulating the law of estoppel.    The cases relied on by opposing counsel do not apply to the case at bar; they are either cases in which efforts were made to vary the terms of a written contract, or to explain bills of lading, or warehouse receipts, or to defeat a written contract.    A receipt may be both a receipt and a contract, and the distinction is clearly drawn by the court in *Drury* v. *Fay*, 14 Pick. 326 ; *Stapleton* v. *King*, 33 Iowa, 28, and cases cited. So far as the paper is a mere receipt, it is explainable; so far as it is a contract upon the faith of which a party has acted, the receiptor is estopped.    Thus in *Lambertson* v. *Van Boskerck*, 4 Hun, 628, the defendants were directed to purchase, with money of the plaintiff then in their hands, $4,000 United States bonds, and wrote to the plaintiff's agents, advising them of the purchase and the cost attending it.    On these facts they were held to be estopped, and were precluded from denying that they had purchased the bonds as stated in their letter of advice.    See on this subject 42 Ill. 179 ; *People* v. *Reeder*, 25 N. Y. 302.

Unless, therefore, the *estoppel* can be made to apply, the general rule must control.    To justify the application of the

law of estoppel, there must be a third party, and the receipt must have been acted upon by him.   If these two circumstances do not concur, the rule cannot be invoked.   It was said in argument that the express company, as to its agents, is a third party.   It would require astute reasoning to establish this proposition.   The express company, its agents and servants, are one as to the public ; and the very contingency which has happened in this case could have been provided for by contract with the plaintiff in error.   There is no public policy involved in this litigation, and the express company should stand in no better attitude than others.   They have been damaged by the *loss of the package*, and not by the giving of the receipt, and their condition would have been no worse without than with it.

CHALMERS, J., delivered the opinion of the court.

The Southern Express Company brought this action against George F. Swann and the sureties on the bond, executed by him while a messenger in its service, to recover the sum of $1,500 alleged to have been by him received in his capacity as messenger, and to have been by him embezzled or lost.

The package containing the money had been confided to the express company at Courtland, Ala., to be transported and delivered to B. F. Walker, at Troup, Texas.   It seems to have been safely transmitted by successive messengers until it came into the hands of one Beall, who claims in turn to have delivered it to his connecting messenger Swann, at or near Canton, in this State.   The latter failed to deliver or account for it at New Orleans, the terminating point of his route.

The express company, on the trial in the court below, having, for the purpose of establishing the reception of the package by Swann, produced his receipt therefor, executed to Beall in the usual mode upon the regulation messenger-book, carried by the latter, Swann himself was put upon the witness stand by the defence, for the purpose of denying in his own behalf that he had in point of fact received the package for which he admitted that he had executed the receipt.   Objection was made and sustained by the court to the admission of this testi-

mony, and verdict and judgment were rendered for the plaintiffs.

The defendants appealed, and assign for error the action of the court in the exclusion of this testimony.

It is conceded that ordinary receipts may be varied, explained or contradicted by parol, but it is said that receipts like the one in question stand upon a peculiar footing, which takes them out of the operation of the general rule.

This claim of special sanctity for this class of receipts is vested upon three grounds : —                                          •

1. Because of the nature of the business of the express company, and the impossibility of successfully prosecuting that business, if its several employés are permitted, after having signed receipts for articles delivered to them, to deny such delivery.

2. Because these receipts are in the nature of contracts to transport and deliver, and, like other written contracts, are not susceptible of contradiction by parol.

3. Because by the doctrine of estoppel the employé is precluded from denying the truth of that which he has once formally acknowledged.

In support of the first ground, it is argued that the enormous business of the company, engaged as it is in the transportation over an immense area of country of countless sums of money and innumerable articles of merchandise, for all of which it is, responsible to the owners, imperatively demands that for its own protection it shall have some system of tracing out the articles committed to its care, and, in case of loss, of fixing the responsibility upon the proper party; that for this purpose it wisely requires every agent into whose hands a valuable package passes to execute a receipt therefor to him from whom he receives it, which receipts, serving the double purpose of an acquittance to one and a check upon the other, are absolutely essential to the business of the corporation.   This salutary system, it is said, will be totally overthrown and destroyed, if each messenger and agent is allowed to contradict the official receipts executed by him, and thus to put the company to the proof in each case of that which he has previously acknowledged in writing.

This line of argument may suggest very cogent reasons why these corporations should exact of their employés stipulations to the effect that all receipts executed by them shall import absolute verity, and be unsusceptible of contradiction; but, in the absence of such stipulations, it furnishes no reason why the law should make such contracts for them. The contracts of express companies and the receipts executed by their servants stand upon the same footing as those of other persons, natural and artificial. The vastness of their business cannot impart to it any element which can invoke in its behalf considerations of public policy, or which can affect those principles of law which regulate alike the greatest and the smallest transactions. They are but a trading company, carrying on a private enterprise for individual gain; and if the risks assumed by them be great, they are certainly voluntary, and are probably protected by the exaction of compensation correspondingly large.

Their receipts to the public at large, and the receipts executed by their employés to each other, stand upon the same footing as similar instruments among other persons. They are *prima facie* obligatory, but *prima facie* only. It is to the interest, indeed, of these companies that this doctrine should prevail, because, if the contrary rule was established, it would not be long before they would be clamoring for the repeal of a principle which would make them liable upon every receipt into the giving of which their agents might be entrapped.

The second ground upon which the claim is based, namely, that these receipts are in the nature of written contracts, and, therefore, cannot be changed or contradicted by parol, is equally untenable. It is true that a paper may be at once a receipt and a contract, but in such case it is only that portion of it which embodies the contract that is within the protection of the principle invoked, while that portion which constitutes the receipt remains subject to attack. Thus a bill of lading which acknowledges the receipt of certain merchandise, and stipulates for a specified compensation to transport it to a particular port, cannot be varied by parol, so as to show a different consideration or place of delivery, but it may be shown that in point of fact no such goods were received.

To draw an illustration from the case at bar, the Southern Express Company, if sued upon its receipt for the money alleged to have been shipped from Courtland, Ala., to Troup, Texas, could not by parol add to or subtract from any of the stipulations contained in the instrument, but it might show that in fact the money never was received by its Courtland agent. 1 Greenl. Evid. § 305; *Stapleton* v. *King*, 33 Iowa, 28; *May* v. *Babcock*, 4 Ohio, 334, 347; *Barber* v. *Bruce*, 3 Conn. 9.

Even if we admit, therefore, that the signing by Swann of the messenger's book was both a receipt for and a contract to deliver the package, it remains true that, while it may not be varied by parol in so far as it was a contract, it may be contradicted as a receipt.

We fail to see how the doctrine of estoppel, which is set up as the third ground of justification of the ruling in the court below, has any application to the facts of the case.

The express company can only claim that Swann is estopped from denying the reception of the money, by showing that it has been induced, by his signature on the messenger's book, to take some step which will result in a loss to it, if he is now permitted to contradict it. It has shown no such action on its part. It is true that it was proved that it had paid the lost money to the owner of the package, but this it did because it was incumbent on it under the receipt executed by its agent in Alabama; and this duty was equally obligatory whether the money was abstracted by Beall or by Swann.

It was said in argument, that, in consequence of the receipt, the company had brought this suit against Swann instead of against Beall; and should it fail here, it could not hereafter go against the latter with any hope of success. There is no legal obstacle to its doing so, and we cannot speculate upon the chances of success in that suit as affording a ground of action in this.

We think the court erred in excluding the testimony; it should have been admitted for what it was worth. If confined to a naked denial of the reception of the money, it would perhaps be of little weight as opposed to the receipt. It should

have been allowed to go to the jury, to be given such weight by them as the facts of the case, the situation of the party and its own reasonableness and intrinsic probability seemed in their judgment to demand.

*Judgment reversed and cause remanded.*